Our last case of the day is Voss v. Voss. For the appellant we have Mr. Erickson and for the appellee Mr. Bair or her. Alright, you may proceed. Charles Erickson on behalf of the Plaintiff Appellants. Ladies and gentlemen, judges, justices of the 4th District Appellate Court. This case involves an appeal from the McLean County Circuit Court in a partition suit. In that partition suit there were two pieces of farmland. One, a 101 acre farm that was in Livingston County which has been called the Flanagan Farm in the briefs. There was also another farm, a 236 acre farm, a McLean County farm which is known as the Chenoa Farm. The Plaintiff's Appellants contend in their brief that the commissioner which was appointed in the case never considered their desires. How did he happen to be appointed? I'm sorry? How did the commissioner happen to be appointed? I believe Mr. Herr may be able to answer that better because I was not the trial lawyer but I believe he was appointed by agreement of the parties. But I'm not certain of that. Does that mean anything if the parties agree on a commissioner and they accept him and never point out what he did wrong? Well, that's certainly an issue that could have been raised at the trial court but I don't believe that that would relieve the commissioner of his responsibility under the order which we would contend that the commissioner didn't follow his responsibilities. So you don't have to tell him, you don't have to tell the court, Mr. Commissioner didn't do this? That's correct. Well, who did that? Well, the Plaintiff's Appellants contend that the commissioner never considered their desires, their interests, that they were willing to take a piece of the Flanagan Farm, that they were willing to take a piece of the Chenoa Farm even if that meant that they took a lesser piece of the farmland, even if that was a lesser piece of the farm ground. Was the trial court correct when it said that the parties were incapable of cooperating? I believe that that was an accurate assessment of what the trial court felt was going on but I believe that there was some possibility that they could get along. And you're saying that after you heard this brief and tell us how you feel and how the plaintiffs feel and the number of attorneys they've gone through? Well, it is definitely true that they went through a number of attorneys. It is definitely true that they were not always happy with the representation they were receiving. But I don't know that that's a reflection necessarily that they couldn't get along. Tell me anything in there that shows that these four people could get along. Well, they had farmed together before in the past. How long in the past? Probably would have been in the 70s and 80s. The farmland was actually part of a life estate which belonged to Grace Voss. But I believe they shared farming duties jointly in the past. Now I don't recall how long ago that was but there is testimony before the trial court that they did share farming responsibilities in the past. But it wasn't in the recent past. You're saying it was in the 70s or 80s. Yes. That's my recollection. The commissioner was charged that the order required that the commissioner consider the interests of the parties and not just their rights and title. The commissioner never considered the interests of the plaintiff appellates and that they would take lesser farm ground and that was what they had wanted all along. The plaintiff appellates would take half of each farm even if it meant they took the half with the most flaws. The commissioner never considered their interests and how their interests would be manifestly prejudicial to the defendant's appellates. In fact, the interests of the plaintiff's appellates may be more prejudicial to themselves than to the defendant's appellates and that they were willing to take the lesser farm land. The commissioner's decision was against the manifest way of the evidence and that it was his charge was to determine the interests of the parties and determine if he could come up with a division which would not be manifestly prejudicial to any party. We contend that he didn't do this in the sense that in the trial he testified that it was his belief that the parties all wanted a quarter. Well, that was never ever what any of the parties wanted and that is clear from the judge's letter ruling when he indicates that the plaintiff appellates were willing to take a half of each if they had to own it jointly. So in essence, if they had to take half of Chenoa and own it jointly and they got the other half of the Chenoa farm, they would own it jointly. Or the same with the Flanagan farm. They were willing to do that to accomplish the division of the property. I love reviewing that evidence. I don't see how anybody could say these four people who apparently inherited this property and had nothing in it to begin with can't get along. Or who can say that they can get along. Well, I don't know that you couldn't have divided up the property and I don't think the commissioner considered the fact that was there any way to divide the property where you could divide it up where the parties could not have to rely on each other to get along. Our problem with what the commissioner did was that he went into the trial with the idea that the parties were to take a quarter each. And that was never the desire of the parties. When was this pointed out to the trial court? I'm sorry? When was this pointed out to the trial court? That they were wanted a quarter each? And what the commissioner did wrong? Was it pointed out to the trial court? I don't know that any evidence was presented to the trial court other than the testimony of the pro se litigants. Who testified, it's in the later stages of the transcript, that they were willing to take a lesser half. That they didn't agree with what the commissioner's ruling was because they were willing to take even the flawed pieces of the farm if the court was willing to give them the flawed pieces of the farm. What exactly is the prejudice that is accrued to your clients by reason of the court's order? Well, my clients view it as this is farmland that was unique to them. Real estate is a unique asset. It has a sentimental value to it that they would rather have a flawed piece of farmland than have money. And that was their desire to keep the farmland ownership of it because it had been in the family for such a long period of time. The prejudice to them was that, yes, while they may be getting an allotted payment which supposedly will equalize the transaction, in their view, the money doesn't actually equalize the transaction because they would rather have the farmland. Even if it meant they got a lesser piece of that farmland. Can I ask you a question? I was a little confused and I think it might be because of the judge's order. Did your clients, the plaintiffs, ever submit an appraisal in the trial court of the farm ground? I don't believe that they did. I don't believe they did. Remember Tom, did they ever? I don't believe they did. I think in the trial judge's letter order he mixed up the parties when he said something. That's just my take on it. I wanted to clarify that but I'll wait for Mr. Hurd. Our position is simply this. The decision of the trial judge based on what the commissioner provided to him was manifestly prejudicial to my clients on the grounds that, as I have previously stated, and as I've stated in the briefs, they were after a division in kind, not a division with a payment of alte. They want land, not money. And it was never explained to them why, if they were willing to take a lesser piece of the farm ground, how that would have been manifestly prejudicial to the defendant at beliefs. So we would ask that on remand that a new commissioner be appointed so that he can take into consideration the desires of the parties, not as this commissioner did, which he took the position that the parties all wanted a quarter, which was never what the parties had ever desired in the first place, and then he reasoned from that, which is not what the parties ever had asked for or had requested. What did they want? They didn't want a quarter of it? No, the testimony is clear for the trial court that they were willing to take a half. The testimony is clear even from the judge's letter ruling that he said that the plaintiff appellants were wanting to take a half of each and essentially own it jointly. That was their position. The trial judge made that clear in his letter ruling that the plaintiff's appellants wanted half of Chenoa, they would own it jointly, and half of Flanagan, and they would own it jointly. Whereas the defendant at beliefs wanted Chenoa, the Chenoa farm, with a payment of loyalty, and the plaintiff appellants would get the Flanagan farm. I think I stated that correctly in regards to the parties and who was to get what. So, thank you. Thank you. May it please the court, counsel. Justice, to address your first question, I believe in the letter ruling, Judge Prowl did mix up plaintiffs and defendants when he was referring to the appraisal. We submitted our appraisal without objection, it was entered into evidence. I was concerned at the trial court that the litigants were appearing pro se, and so I took the liberty of actually subpoenaing their, issuing a subpoena to their appraiser. He was available to testify, that was in the record. They chose not to call him. His appraisal in the testimony of Gerald Voss was that his appraiser actually appraised it lower than our appraisal. So, I hope that addresses your question. Thank you. On the issue of the merits of this case, it's never been clear to me exactly what the plaintiffs have wanted. They are the plaintiffs in this case. They filed the partition action. They were the ones seeking a sale or division of the property. The statute is clear that a commissioner can be appointed. In this case, it was appointed by the agreement of the parties at the time they were represented by counsel, Mr. J. Edmonds. He was directed to determine whether or not the property was subject to a division, which was fair and equitable. His conclusion, obviously, was that it was not. One of those reasons was certainly that the parties were incapable of cooperation. But it was also because of a number of other factors. The topography, the drainage problem, soil erosion, the various features on the property, including a borrow pit on one of the properties, for lack of a better term, a junkyard on another property. The court, after hearing the testimony and reviewing the report of the commissioner, determined that it could not be divided equitably because of these various reasons. It was also clear at the trial that neither party wanted the property sold. So the court, I think, did what was equitable and what was fair, and followed the statute and followed the relevant case law, and crafted a decision based on common sense, which was, we're going to divide this between the two farms, and we're going to require the parties getting the better half to pay OLTI. So it really is a very simple, well-reasoned decision that the court thought out, I think, very well. Crafted a decision that solved the problem. I think, as Justice pointed out, a lot of these issues are, frankly, none of them were raised until this appeal. And so some of the issues raised in the appellant's brief, I think, are waived because of that reason. So I do think that Judge Prawl made a very well-reasoned decision, and we would ask that it be affirmed on appeal. Thank you. All right. Thank you. Mr. Erickson, rebuttal? I'll be brief. I mean, we believe that the court did the best it could with what it had before us, and that was what the commissioner did. I mean, the court didn't have... Well, his responsibility is to put evidence in front of the trial court. It would be the commissioners who was appointed to... You mean the parties are just kind of sit there like lumps? No. I understand that question. If they're pro se litigants, it doesn't let them off the hook to just sit there and do nothing. They're expected to present something before the trial court, not, as you say, to sit there as lumps and do nothing and just expect everybody to come to their defense and defend them before the trial court. But our contention would be that the commissioner also has some responsibilities, and the commissioner had responsibilities under the order which appointed him. The commissioner had responsibilities under the statute, and that responsibility was to ascertain the interests of the parties and determine what those were and then make a determination how, if this party wants this, how that's manifestly prejudicial to the other party, or if this party wants this, that's manifestly prejudicial to the other party. What this commissioner did was determine that all the parties wanted was a quarter of each property, and that's never what the parties had ever wanted, so then he reasoned from that point to where he wanted to go with it, where we think he should have said, listen, if you want a half and you want a half, here's why that won't work. But that's not what the commissioner did. After the court entered its order, you filed a motion to reconsider, is that correct? Yes, I did. And that was a one-page motion. Yes. And I read it, and I don't see where you say anything factual. Well, I made those arguments before the trial court as to why we thought the decision was incorrect, and the judge denied the motion. Thank you. All right. Thank you, counsel. We'll take this matter under advisement and stand at recess until further call.